Alright, next case on the docket is People v. Kirgan, cause number 5-13-0185. We'll give everybody a couple minutes here to gather their things, pack and unpack. Alright, Mr. Muhlenkamp, whenever you're ready. Thank you, Judge. Your Honors, good afternoon, Counsel. Your Honor, my name is Anthony Muhlenkamp. I represent Keith Kirgan. He is the defendant in the original case and the appellate in this case. Your Honor, as I spoke with the opposing counsel prior to the argument's beginning, I have decided, in terms just of general efficiency, I've got three issues tied to my briefs. I'm going to rest on my brief as to issue number two, which is the sufficiency of the evidence. I can obviously try to answer any questions you have about that issue, but I'm only going to orally argue today the first issue and the third issue to hopefully make things a little bit easier. With that, Your Honor, the first issue that I want to talk about is what I'm going to call essentially the fatal variance issue. To give you some background on the case, Judges, our argument is that the trial court erred when it allowed the state to proceed on charge and argue evidence that it didn't originally charge in the indictment. To have an understanding of the general facts in the case, he was convicted of two charges. Count one, which was criminal sexual assault, and count three, which the trial court ruled was essentially merged into count one. But the important part that we need to focus on is the wording of the charges. As far as the criminal sexual assault, that requires some act of sexual penetration. That's the key element that's described in the jury instructions in the statute. Per that count, the state chose to plead that charge as an act of sexual penetration with the victim in that the defendant placed his penis in her anus. That's the way they pled. They pled actual insertion. As to count three, a similar yet less severe charge of criminal sexual abuse, they pled the general term of sexual conduct, which again is the act that's required by statute in the instruction in that the defendant touched the anus of the victim with his penis. So my point is, Judge, without getting into too many vulgar facts of the case, the state originally charged to plead the case extremely specifically. They pled it with insertion, and they pled it with conduct. They didn't just use the general terms of an act of sexual penetration or an act of sexual conduct. The reason this is important is because when the case got filed that specifically, the defendant was put in a position where there's no reason for him to file a motion to kill his victim. The charge couldn't get any more specific than it already has. And as the record showed in this case, the order that the state presented its evidence, that's important, because it went from specific with the charging document of insertion and conduct, and as it went along, the bench trial, there was no jury, but as it went along, it became much and much more general. Whereas by the point, by the time we got to the closing arguments, the state's attorney was arguing, I don't have to prove the insertion at all. All I have to prove is any type of contact or oversight with grace. Isn't that what case law says? Well, Your Honor, and I'm glad you brought up that point. What about the people versus Ross, that text? And, Judge, those are both cases cited by the state in reply, and I would agree that seems to be an accurate statement of the general law in that the means of sexual penetration, which they've led here, the means is not an essential element. I'm going to mispronounce this term merely surplusage, I believe. Surplusage. Surplusage. Okay, I'll argue with you on that. And I review those cases, and they all pretty much say the same thing for that point. But the one that I would, the people also cited, well, the state also cited people versus Oliveri in the reply brief also, and that was one of the cases citing for the same general proposition that we just talked about. That case specifically said, that was a Fourth District case, a little different than this one because in that case, the defendant was charged with three counts of aggravated sexual assault. His charge was he got convicted for three different theories of one assault. That was his attack, but the same issue came up as far as that definition. The court specifically noted the Fourth District to the extent that the defendant may have desired to know more of the details of the charge, he could have filed a request for a bill of particulars. I think that's important because we've got two lines of authority here. We've got that line of cases starting with Ross, with Oliveri, with a couple others that the state cited, and they all stand for those propositions. But we've also got, you know, those same courts saying, well, the defendant can always file a motion for a bill of particulars if he's confused by the charge. But there's a disconnect there. I understand the precedent, you know, based upon those four or five cases cited by the state with Ross, with Oliveri. They all kind of have that same language about it not being an essential element. But there's also language there saying, well, the defendant can always file a motion for a bill of particulars. Why would he file one in this case? It couldn't have gotten any more specific. So there's a disconnect there. I understand the precedent against me on this, and I understand the line of cases. But I would request the court to at least reexamine that issue because I think there is an issue here. The defendant was obviously caught off guard because in his opening statement, his attorney from square one, if you review the record on the case and I cited it in my brief, you know, from square one, he said, Judge, the state's not going to be able to prove insurgent. They're not going to be able to prove penetration. And then later on, that becomes an issue. The defense counsel objected again in closing arguments at one point because the state again tried to change the definition of sexual conduct. Instead of contact, as it starts in the pleading, it said, well, transmission of bodily fluids in any way to the victim. And again, it was kind of a bizarre objection the way it was noted. But the defense counsel objected again in closing and said, Judge, I didn't prepare for a fine-stealing case here. I mean, that's what he said. Again, the issue is, you know, was he misled in the preparation of his defense? I think it's clear from the record he was. So what do you think that the defendant might have done differently with this knowledge? I know you were not trial counsel, obviously, but what's the prejudice? What would he have done differently, even though this argument was made in closing argument? Your Honor, I have a feeling that question is coming. Unfortunately, I'm not the trial counsel in this case. But upon my review of everything and, you know, looking at the evidence in the case, the first thing I would have done, I would have filed a motion for a bill of particulars to try to confine the state to, you know, what evidence they were going to present and what theories they were going to present. That would have been my approach. If that – I mean, ideally, I think the more logical format here is you plead in general, Chief, and then it becomes more specific as necessary. But when you plead it specifically and you never – and then it kind of opens up Andorra's box once the evidence comes in, I mean, he's got a right to file a motion for a bill of particulars. And, you know, he didn't know he needed one until the closing argument, which there's a due process issue there. Well, and I'm thinking, too, that if, you know, the defense counsel would have thought of something, it's a bench trial. And there could have been remedies asked for. This is different than it was pled. And, you know, I would like to continue the case, the bench trial, to allow for whatever needed to be done. But I was just having trouble seeing what the defendant might have done differently. Understood, Judge. Moving on to my last issue, the third issue. And, Your Honors, in all frankness, I think this is the more fundamental constitutional issue in this case, and it's one that I don't see very often pop up in cases, which is why when I was coming through this record, as you've indicated, I wasn't the trial counsel. So I'm coming through that 500-page record looking for issues. This one jumped out at me. It's fairly unique, so I need to go through a few of the facts to make sure the court has a proper background on it, but I won't take too long. But essentially my claim is that the trial court abused discretion when it granted the defendant's initial trial counsel, who was a Mr. Beltman, granted his motion to withdraw from the case. Now, I think it's well-settled law that a defendant has the right to counsel of his choice. He has the right to professional assistance of counsel, and he gets to pick whoever that is. In this case, you know, Mr. Kirk had hired Mr. Beltman. Now, as an initial point, there was some disagreement between the state and myself in our briefs as far as which standard of review should apply to this case. So before I get into the facts of how the withdrawal popped up, if I could just touch on that briefly, my position and my reply in a case that was also cited by the state is that an appellate court can't still review the merits of this claim, and it has not been forfeited because this is a fundamental right. Because the denial of the counsel of his choice has been a fundamental right, when a defendant presents an alleged pretrial defect that affects a substantial right, the appellate court does have discretion to hear the issues on appeal. And the main case I've cited to, which was also cited by the state at some point, is the Howard case. Now, in that case, it was a little different. The defense attorney asked for Lee to withdraw essentially because there was a breakdown in communication. Nobody from the defendant's family would contact him, who knows, he may not have been getting paid, but whatever the issue was, he asked the court for Lee to withdraw, and that issue was taken up on appeal. The trial court asked the defendant who was confined, he made a record, do you want your attorney to withdraw? He did, obviously. You know, he got his position on it, and the defendant told the court, well, no, I don't want him to withdraw. I want him to hire me. I want him to keep representing me. But essentially that case came up, and in that case, there was no post-trial motion claiming this issue, but the appellate court took it up anyway. And specifically in the Howard case, they said, accordingly, we exercise our discretion, proceed to the merits of the defendant's case, applying an abuse of discretion standard of review. And in that case, there was no post-trial motion. The same thing is done in this case. The only difference was the basis or the reason for the motion to withdraw, and then secondly, the only other difference was that the trial court made a more specific record than in this case. But as far as that goes, it's my position that Mr. Perkins' case or point on this issue has not been forfeited and that this court should apply an abuse of discretion standard. Now, to get into the specific facts of how the motion to withdraw popped up, first of all, this case dragged on for about two and a half to three years. It went on for a really long time. The defendant hired Mr. Feldman, and he entered his appearance on October 22, 2009. About 18 months later, April 28 of 2011, that's when there's a motion to withdraw. I'm going to call it a hearing. It wasn't much of a hearing done at the trial court level, so about 18 months into his representation. And I cited this specifically, Your Honors. It's in my appendix. It's page 6 and 7 of my brief. It's in the court record. It's page 248 and 249. I'm going to go through some points on it because it is so brief. But essentially, Mr. Feldman shows up with the appellant, Mr. Kirkland, and he says, Sir, yesterday I was informed by the state, by facts, that I am a potential witness in this matter. I have discussed the ethics of that with my client, and while he does not necessarily like it, he understands that a lawyer cannot be a lawyer and a witness at the same time.  And while all those things are being said, it's clear the defendant is in open court, standing there, and never disagrees with what his attorney says. It's my understanding he's correct. Correct. He never says, Wait a minute. I object to this. I don't want this to happen. In other words, he's saying he agrees that although he does not necessarily like it, he understands he's going to have to get another lawyer, basically, is what Mr. Paul mentioned. Correct, Judge. He's standing there silent. I'm not disputing that. And then the court then confirms with the state that they do intend to call Mr. Feldman as a witness. The state says yes, and the court grants the motion. My point is there was no further inquiry to the defendant himself as far as, you know, do you understand what this conflict means? Do you want Mr. Feldman to keep representing you? The court never got his feedback. And then at the base trial, Mr. Feldman's name never came up once. It didn't come up in the state's opening statement. He was never called as a witness. It didn't come up in closing arguments. It never came up at all. My position on this point specifically, Your Honor, is that by failing to make a record in this specific type of circumstance, the trial court abuses discretion. I mean, there's no later time where the defendant made any objection. He didn't, in a post-trial motion, preserve the issue and say, I had to go to trial with an attorney I didn't want to go to trial with. I mean, this is everything right here. That's everything. It's about two pages. And he got a new attorney a couple months later. That attorney that tried the bench trial didn't file a post-trial motion. And my position, Your Honor, is at that motion to withdraw hearing, I mean, the defendant was standing there without counsel. I don't know what he's expected to do at that point. He's not an attorney. He's on bond for an extremely serious offense. He probably just doesn't want to get his bond revoked and go to jail. So at that point, did he specifically speak up and say, Judge, I've got a problem with this? He didn't. But at the same time, I don't think this court should expect him to because the case that's cited in the brief is about how he's going to do it. You're arguing that he was denied the counsel of his choice. But from looking at this, you know, I mean, maybe it was okay with him if Velton withdrew. Well, the problem is, Judge, I think we can't really tell from this. I mean, I'm sorry. No, no. He didn't make any objection. Your Honor, I made no objection. But my position in this specific case, in this specific type of circumstance, we're dealing with a guy's fundamental right to be represented by the attorney that he paid money to, to represent him to try to keep him out of jail. There needs to be a specific inquiry. And if you look at the Howard case that I mentioned previously, in that case, if you read through that, the court specifically asked the guy. You know, he was in custody. He was there in court, and they asked him, what's your opinion on this? And, you know, he got background for the court to make a full record as far as, you know, is this an issue where we really need to, you know, get rid of his attorney? Or is this an issue that we can work through? Because that never came up. We never found out whether there actually was a potential conflict of interest. We never found out who Attorney Velton interviewed. We never found out what he found out. And we never found out whether he was a necessary witness, you know, for the state's case at all. And at the end of the day, when the trial happens and the proofs are put on, he's never called the witness. So regardless of what the initial, you know, he was endorsed as a witness to interview or he was endorsed to be a witness for the state. You know, he's got a job and a duty as the guy's lawyer to interview witnesses and investigate his case. That doesn't necessarily mean now there's a conflict and he can't be his attorney anymore. And the court never looked into that and figured that out or even asked. And I think that's a problem. And, again, it's completely different from the Howard decision where the court made a proper record. Specifically, the other issue that I think is important, Your Honors, is how the state classifies this. They classify this as, well, it was an agreement between the parties. You know, the state said we've got a problem, the defense consented, and because it was an agreement between the parties, this type of scenario is not subject to the traditional framework analysis of there's a conflict of interest where a defendant wants an attorney that has a conflict of interest in the court or the state has a problem with it or the state files a motion ahead of time to say, hey, we have a problem with you representing this specific defendant. Those are the traditional cases or fact scenarios that this type of scenario is analyzed by. My position would be those issues should still control here because this wasn't simply an agreement between the parties. That hearing that we're talking about, Mr. Kirby never even spoke. And, again, my issue is the nature of the potential conflict of interest. It was never explained. And it was never explained to him that he knew what it was, whether he could potentially weigh the conflict of interest. And the court never even found out, you know, whether Mr. Belman was the first. Did the first attorney get money at that time? It was my, he had been privately reviewed by the judge. Right. Yes. I don't know specifically how much, but, yes, he had it. But the second attorney was what? He was also private counsel. So it took Mr. Kirby a couple of months to retain another attorney, but he eventually did. It wasn't up to the public. It was not up to the public. And, Your Honor, the reason I'm pointing this out and another case that I wanted to focus on, this issue that came up again in both briefs, is the factors that we look at in those traditional cases where a conflict, you know, what we're not talking about is just an agreement between the parties. If this was an agreement between the parties, I mean, I wouldn't be here. I don't classify that as an agreement between the parties. If they make a full record and Mr. Kirby says, I understand, you know, I understand what this means, Your Honor. Thank you. Can you please give me some time to, you know, hire counsel? Well, then the state has a better argument here. But based upon this, what we've got here, I think the court still needs to apply the traditional cases and the factors mentioned and the factors that come up is there's a presumption in favor of a defendant's counsel choice, and that's the Holmes case. The factor that one of the factors that the court should look at is his right to be unviable with the other's attorney. And it quotes three more factors that aren't specifically applicable here, but then the Ortega case, also cited in the brief from the Supreme Court of Illinois, says it's not an exhaustive list. An additional factor to consider is whether the state legitimately needs to call a certain witness or is attempting to manufacture a conflict to prevent the defendant from being represented by his counsel of choice. That's important. I think that's a query that the trial court has a duty to look into, and here, trial court duty. Thank you, sir. You'll have a chance for rebuttal. Ms. Camden. Thank you. May I please report, counsel? Jennifer Camden on behalf of the people. With regard to Issue 1, the defendant here today said, quote, the means is not an essential element of sexual assault. And that's the key to Issue 1 here. The theory of sexual assault with which the defendant was charged in Count 1 under Section 5-12-13A2, sexual assault, the essential elements were, one, an act of sexual penetration, and, two, that the defendant knew that the victim was unable to understand the nature of the act or unable to give knowing consent. And, of course, the statute goes on to define sexual penetration as including several acts, such as any contact or intrusion between the sex organ of one person and the anus of another. And as the court correctly observed, the appellate court has repeatedly held that even where the charging instrument contains the surplus allegation of the means of penetration, an allegation that the defendant here today has agreed is a surplus allegation, the finder of fact may nonetheless convict on an alternate theory of penetration for which evidence is presented. The defendants argued that the State made a substantive amendment to the charging instrument, but, of course, that inquiry depends on whether the change was to an essential element, and here it was not. The defendant argues that there's been a fatal variance here, but, again, that inquiry revolves on the question of whether there's been a change to an essential element of the crime, and here there was none. Variance is not fatal. It does not involve an essential element of the charge. Now, the second part of the fatal variance inquiry is whether the defendant was misled in making the defense, but, of course, the threshold inquiry is whether there's been a variance to an essential element of the charge. So if this court finds that sexual penetration is the essential element, as multiple prior courts have done, then it need not consider the second portion of the fatal variance inquiry. However, it's worth noting that count one alleged that the defendant committed an intrusion of the victim's anus with his sexual organ, and, of course, insertion is impossible without contact, and also count three specifically alleged, again, surplused anus-to-anus contact, which is the theory of penetration that the defendant is complaining that he did not have notice of, even though the State need not have provided that notice. The point here is that he had it. Also, and I think this goes to Your Honor's question just before, the defendant's defense was that he did not touch or penetrate the victim's anus with his sex organ, so he was not misled in his defense. The people cited in the answer brief case called Simkins, which says that for the defendant to be misled in his defense, he actually must hold something back. There actually must be something that he would have offered but did not. Now, the defendant's reply brief distinguishes three cases cited by the people in the answer brief, Ross, Oliveri, and Bowen. I cited those cases for the law, just laying out the basic law on this issue. The defendant is distinguishing these cases on their facts. The defendant does not distinguish on their facts the two cases that the people cited for their facts in the answer brief, and that's People v. W.T. and People v. Harper. And in both of those cases, the charging instrument alleged a specific theory of penetration. And in both of those cases, the appellate court held that evidence of any act of sexual penetration was sufficient. The defendant suggests that he did not file a bill of particulars because he perhaps mistakenly relied on the presence of surplusage in the charging instrument. He suggests that the bill of particulars would, and I'm quoting from his argument today, confine the state to the evidence and theories. The bill of particulars involves the disclosure of the state's evidence, and the defendant hasn't cited any authority for the proposition that a bill of particulars, even if it had been filed by the state, would have somehow confined the state to arguing only a particular legal theory based on that evidence. Also, it's doubtful that a motion for a bill of particulars would have been granted, because the appellate court held in Bowen, which is cited in the people's answer brief, that the words sexual penetration and charge are sufficiently specific to inform the defendant with reasonable certainty of the offense he's accused of committing. But again, the inquiry into whether the defendant was misled in making this defense is only relevant if there was a variance in an essential element of the charge, which there was not. With regard to issue 3, the people argued in the answer brief that the issue was forfeited because it wasn't preserved. The defendant responded in the reply brief at page 5 that the issue was not forfeited under Howard and that this court should not review the issue for plain error. However, Howard was a plain error case, and Howard, the defendant, also did not preserve his claim, and the court reviewed the issue for plain error. The defendant in this case is not seeking plain error review. In fact, he insists that this court should not engage in the plain error inquiry, so this court can stop there on issue 3. If this court chooses to consider the issue, the defendant is arguing that he was deprived of his right to counsel of his choice. However, the defendant has no right to an attorney who has a conflict of interest, and even if he waived that, he could not waive the court's obligation to provide him with a fair trial. In this case, the defense attorney agreed that there was a conflict of interest, so the court was within his discretion in permitting the trial attorney to withdraw. The defendant here is essentially arguing that the trial court abused its discretion in granting the attorney's motion to withdraw, where the attorney himself and the state both were of the opinion that the attorney was a potential witness. Also, the defendant did consent to the withdrawal. The trial attorney, Feldman, told the court twice that the defendant, quote, understood it was just the way it was, that was one time, and then in a separate hearing said that while he does not necessarily like it, he understands. And the defendant says that the defendant personally did not speak at that hearing where the motion to withdraw was granted, but in fact after the attorney withdrew, the defendant personally consented to a continuance so that he could obtain new counsel. The defendant suggests that this court should find the existence of an implied objection to that withdrawal and give the defendant the, quote, benefit of the doubt, as in the reply of 7. But, of course, on appeal, all doubts are to be resolved against the appellant, not in his favor, and there's no authority cited for the idea that an implied objection can be found. But, again, regardless of the issue of consent, the defendant had no right to an attorney who had a conflict of interest. And finally, with regard to whether the record is sufficient here, Attorney Feldman said, quote, I became a witness when I interviewed a witness. On this record, the reason for the trial court's granting of this motion is clear. Also, it's notable that in the record on page C257, the substitute counsel, again, told the trial court that Feldman, quote, had a conflict come up and had to withdraw. So neither Feldman nor defendant substitute counsel challenged the existence of a conflict here. Unless there are questions, I'll ask the court to. I have no questions. Thank you. Thank you, Ms. Camden. Any rebuttal? Thank you, Your Honor. Your Honors, unless I'm misreading the Howard case, which I've got it. I'm looking at it right here. That's the one that I kept bringing up about the appropriate standard of review. Accordingly, we exercise our discretion and proceed to the merits of defendant's case applying an abuse of discretion standard of review. I'm taking that directly from the language of the case. So it's still my position that abuse of discretion is the proper standard for that issue. But to hit upon just a couple other things that they brought up, again, in those essential cases I noted, the Wheat, Holmes, and Ortega cases, there's a preference or a presumption in favor of defendant's counsel of choice. However, the Holmes case specifically says the evaluation of the facts and circumstances of each case under this standard must be led primarily to the informed judgment of the trial court. Furthermore, in the Ortega case, the Ortega case that specifically applies what an abuse of discretion in this type of fact scenario is, it specifically said while formal findings of fact and statements of reasons are not required, the trial court must make a record adequate to allow meaningful review of its exercise of its discretion. And the trial court abuses discretion when it doesn't do that. My position is, in this case, the trial court had a unique duty here to make a complete record, not through the representation of Mr. Kirby's attorney. I mean, it's his right. It's not Mr. Belden's right. They should have specifically asked the guy, do you know what's going on here? Who do you want your attorney to be? Do you want Mr. Belden to keep being your lawyer? Do you want to weigh this potential conflict now that we know what the conflict is, which we never did? That's a problem, and that's the Supreme Court of Illinois telling us the trial court must make a record adequate to allow meaningful review of its exercise of its discretion. In this case, we've got an inch and a half from the record of this hearing in which Mr. Kirby was never even asked anything other than you agree you need more time. That was pretty much it. And then when the state says, well, they cite a number of cases that say a silent record or an incomplete record gets resolved against the appellant. And they cite all these cases. First thing I want to point out is none of these cases deal with a criminal defendant's fundamental right. Some of these are even civil cases. And secondly, it's not logical to say the court, the trial court has a duty to make a complete record. And then at the same time say, well, it's an incomplete record, so we're going to resolve it against the appellant. I mean, in this type of case, you can't apply that rule. It doesn't make any sense. I mean, that's not justice. That's not equity. And then furthermore, as a backup argument, they said even if the case is properly viewed, you know, as not an agreement between the parties, the substitute counsel, a defendant still doesn't have a right to an attorney who has a conflict of interest. I agree. But what I would ask the court today is what's the conflict of interest? Nobody knows because there wasn't a record made. Nobody asked. And the court didn't inquire, you know, the state's attorney, the defendant, Mr. Feldman, anything about the conflict. We don't know. And that's the problem. If the court makes a record and they're satisfied that, hey, there's a conflict of interest here, you're a necessary witness, you can't be a witness and an attorney at the same time. Well, then we're probably not even here on this issue. But unfortunately, that didn't happen in this case, and that's what we're dealing with. And then finally, what I'll close up on, Your Honors, is, again, because we're dealing with a fundamental right, you know, pursuant to United States v. Gonzales-Lopez, deprivation of the right is complete when a criminal defendant is previously prevented from his counsel of choice. There doesn't need to be an introductive analysis. There doesn't need to be a prejudice analysis. It's complete at that point. And my position is that's where we're at. The incomplete record argument made by the state, that shouldn't be applied in this case because of the specific duty that the trial court had. And the record was never made. A proper record was never made. This court, for those reasons, should revand the case and convict Mr. Perkins of the trial. Thank you, Your Honors. All right. Thank you both for your briefs and arguments. We'll take this matter under advisement and issue a decision in due course. We're going to take a brief recess. All rise.